**UNITED STATES, Appellee,**

v.

**Nancy FEARON–HALES, Defendant–Appellant.**

**No. 05–5999–cr.**

United States Court of Appeals, Second Circuit.

May 21, 2007.

Virginia Chavez Romano & Katherine Polk Failla, Assistant United States Attorneys (Michael J. Garcia, United States Attorney for the Southern District of New York, on the brief), New York, NY, for Appellee.

B. Alan Seidler, New York, NY, for Defendant–Appellant.

PRESENT: Hon. RICHARD J. CARDAMONE, Hon. CHESTER J. STRAUB and Hon. J. CLIFFORD WALLACE,* Circuit Judges.

## SUMMARY ORDER

Nancy Fearon–Hales appeals from a judgment entered October 21, 2005, in the United States District Court of the South-ern District of New York (Laura Taylor Swain, *Judge*) following a jury trial, at the conclusion of which she was convicted of conspiracy to import more than one kilogram of heroin into the United States in violation of 21 U.S.C. § 963. We assume the parties' familiarity with the facts, procedural history, and issues on appeal. For the following reasons, we affirm.

■ Fearon–Hales first argues that the verdict was not supported by legally sufficient evidence proving her guilt beyond a reasonable doubt. Fearon–Hales's sufficiency claim rests on Alexander Becker's statement to the German police that his co-conspirator "Nancy" had scars under her eyes, which appellant does not, and Becker's failure to identify Fearon–Hales as his co-conspirator at trial.

This court must affirm the conviction if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Pierce,* 224 F.3d 158, 164 (2d Cir.2000) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). We must "consider the evidence in its totality, not in isolation." *United States v. Autuori,* 212 F.3d 105, 114 (2d Cir.2000). In this case, a review of the record shows that the government presented other evidence at trial sufficient to support the jury's finding of guilt. The government presented six wiretapped conversations in which Nak Kusi, a drug courier, discussed logistics for importing drugs with a woman referred to as "Auntie." At trial, Kusi identified the woman on the calls as Fearon–Hales, the government presented evidence that phone numbers used during the calls belonged to Fearon–Hales, and the jury was given the opportunity to compare

---

* The Honorable J. Clifford Wallace of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

the voice on the calls with an authenticated recording of Fearon–Hales's voice. The government also introduced evidence of a wire transfer payment to Kusi from Fearon–Hales's address and evidence that Fearon–Hales's travel coincided with the dates of the drug importation. Viewed in its totality, this evidence is sufficient such that a rational fact-finder could find Fearon–Hales guilty beyond a reasonable doubt.

 Fearon–Hales also argues that the jury was not competent to compare voice recordings and attribute the voices on the wiretaps to her. Though defense counsel objected to allowing a translator to testify about his comparison of the voices, counsel did not ultimately object to the introduction of the MDC recording for jury comparison. In fact, in summation, defense counsel *encouraged* the jury to compare the two sets of recordings. We will not permit an appellant "to evade the consequences of an unsuccessful tactical decision" at trial. *United States v. Coonan*, 938 F.2d 1553, 1561 (2d Cir.1991). Accordingly, we review the district court's ruling for plain error only. *See Caruolo v. John Crane, Inc.*, 226 F.3d 46, 55 (2d Cir.2000). This standard supports reversal only where a district court's evidentiary ruling, which is always accorded substantial deference, was not only erroneous, but also "result[ed] in a miscarriage of justice or is an obvious instance of misapplied law." *Id.* (internal quotations marks omitted) (alteration in original). "[V]oice identification is not generally considered to be an area where expertise is important." *United States v. Cambindo Valencia*, 609 F.2d 603, 640 (2d Cir.1979). Thus the jury is generally competent to compare voice recordings with authenticated specimens, and no expert witness is required. *United States v. Sliker*, 751 F.2d 477, 500 (2d Cir.1984). Accordingly, we hold that the

District Court did not commit plain error in admitting an authenticated recording of Fearon–Hales's voice for comparison with the voice on the wiretapped calls.

Fearon–Hales also contends that Kusi, testifying by teleconference from Germany, was improperly coached by his attorney and the German interpreter. The record confirms that Kusi discussed a question regarding the dates of the drug smuggling trips with his attorney in Germany and the German interpreter prior to answering it. The record does not indicate, however, that the alleged coaching was intended to influence the witness's substantive testimony. Rather, the record shows that the incident in question arose due to confusion about a translation.

 Fealon–Hales argues that this "coaching" makes Kusi's testimony unreliable. However, any improper coaching goes to the weight of the witness's testimony, not admissibility. The Supreme Court has noted that "opposing counsel . . . is not without weapons to cope with 'coached' witnesses." *Geders v. United States*, 425 U.S. 80, 89, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976). "Skillful cross-examination could develop a record which the [counsel] in closing argument might well exploit by raising questions as to the [witness's] credibility, if it developed that [opposing] counsel had in fact coached the witness." *Id.* at 89–90, 96 S.Ct. 1330. In this case, defense counsel had ample opportunity to cross-examine the witness and did in fact question the witness's credibility in closing arguments. The District Court properly allowed the jury to determine how much weight to afford Kusi's testimony.

 Finally, Fearon–Hales argues that the District Court's sentence of 151 months was unreasonable. She claims that she should have received a lower sentence because: (1) she has no prior criminal record; (2) she has a substantial and

regular work history; (3) she is the mother of three children, one of whom is five years old; and (4) her co-conspirators received shorter sentences than she did.

Reviewing a sentence for reasonableness entails "consideration not only of the sentence itself, but also of the procedure employed in arriving at the sentence." *United States v. Fernandez*, 443 F.3d 19, 26 (2d Cir.2006) (citing *United States v. Crosby*, 397 F.3d 103, 114 (2d Cir.2005)). Notably, however, "[r]easonableness review does not entail the substitution of our judgment for that of the sentencing judge. Rather, the standard is akin to review for abuse of discretion." *Id.* at 27. Thus, this court considers whether the sentencing judge "exceeded the bounds of allowable discretion, ... committed an error in law ..., or made a clearly erroneous finding of fact." *Id.* (quoting *Crosby*, 397 F.3d at 114).

Under the statute, Fearon–Hales faced a mandatory minimum of 120 months' imprisonment and a maximum term of life imprisonment. 21 U.S.C. § 841(b)(1)(A). It is not disputed that the recommended sentence for Fealon–Hales's crime under the Sentencing Guidelines was 151 to 188 months' incarceration. This range reflects Fearon–Hales's lack of criminal history, her supervisory role, and the quantity of drugs involved. The record demonstrates that the District Court considered the requisite statutory sentencing factors as well as Fearon–Hales's lack of criminal record, her family responsibilities, and her work history in sentencing Fearon–Hales to 151 months' imprisonment.

The record further reveals that the District Court did not misapprehend its discretion to impose a non-Guidelines sentence. *See Crosby*, 397 F.3d at 114 (Following *Booker*, "a sentencing judge would commit procedural error by mandatorily applying the applicable Guidelines range."). A lack of criminal record is not grounds for a non-Guidelines sentence, as the Guidelines range already takes into account prior criminal history. Family ties and favorable employment record are not ordinarily relevant in determining whether a departure from the Sentencing Guidelines is warranted, but following the Supreme Court's decision in *Booker*, the sentencing court has discretion to consider these factors. *See United States v. Jones*, 460 F.3d 191, 194 (2d Cir.2006). "Although the sentencing judge is obliged to consider all of the sentencing factors outlined in section 3553(a), the judge is not prohibited from including in that consideration the judge's own sense of what is a fair and just sentence under all the circumstances." *Id.* at 195. The record does not suggest that the District Court failed to recognize this discretion. The District Court specifically noted that it had considered Fearon–Hales's family situation and work history, but balanced these concerns with other factors including the seriousness of the crime, the need for deterrence, the need to protect the public, and the need to avoid unwarranted sentencing disparities. Upon consideration of these factors, the District Court determined that a sentence at the low end of the Guidelines range was appropriate.

■ The fact that Fearon–Hales's two accomplices received lower sentences in Germany does not mandate a downward departure in the instant case. As a preliminary matter, because this argument was not raised at sentencing, it is "forfeited on appeal and addressed only upon a showing that the court committed plain error." *United States v. Miller*, 263 F.3d 1, 4 (2d Cir.2001). "For there to be 'plain error,' there must be (1) an error that (2) is 'plain' and (3) 'affect[s] substantial rights'; if these elements are satisfied, then the court may correct the error, but

**114**

only if (4) the error 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" *Id.* (quoting *Johnson v. United States*, 520 U.S. 461, 467, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997)).

One goal of the Sentencing Guidelines is to reduce unwarranted sentence disparities among federal defendants "with similar records who have been found guilty of similar conduct." *See United States v. Joyner*, 924 F.2d 454, 460 (2d Cir.1991). However, the disparate sentences for Fearon–Hales and her accomplices are not unwarranted: Kusi and Becker were sentenced in Germany pursuant to German criminal law, they were couriers and Fearon–Hales their supervisor, and they plead guilty and cooperated with the government while Fearon–Hales did not. Moreover, we have held that the desire to avoid disparate sentences for co-conspirators is not a permissible basis for a departure because it would necessarily undermine national uniformity. *Id.* at 460–461 ("To reduce the sentence by a departure because the judge believes that the applicable range punishes the defendant too severely compared to a co-defendant creates a new and entirely unwarranted disparity between the defendant's sentence and that of all similarly situated defendants throughout the country."). Thus the District Court's decision not to downwardly depart on the basis of the sentences given to Fearon–Hales's accomplices did not constitute plain error.

For the foregoing reasons, we AFFIRM.